Crystal Morgan, (SBN: 335712)
Morgan Legal Services, PLLC
2641 E. Uintah St., #9155
Colorado Springs, CO 80932
(720) 900-1065
CMorgan@MorganLegalServicesPLLC.com

Ronda Dixon (SBN: 136858)
Dixon Justice Center
400 Corporate Pointe, Suite 300
Culver City, CA 90230

Attorneys for Petitioner
DAYSTAR PETERSON

## UNITED STATES DISTRICT COURT

## THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAYSTAR PETERSON**, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>**DOE CORRECTION OFFICERS 1-50**, individually and in their official capacity, **Danny Samuel**, individually and in his official capacity, and **CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**, a public entity,<br><br>Defendants. | Case No.: 2:26−cv−03991−JLS−AYP<br><br>**EX PARTE APPLICATION FOR TEMPORARY EMERGENCY RELIEF PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE RULE 65, AND LOCAL RULE 65; [PROPOSED] TEMPORARY RESTRAINING ORDER; DECLARATION OF COUNSEL; AND [PROPOSED] ORDER TO SHOW CAUSE.** |

COMES NOW, Plaintiff DAYSTAR PETERSON (herein "Plaintiff Peterson" or "Peterson," who is publicly known as Tory Lanez), by and through his attorneys, Crystal Morgan and Ronda Dixon, respectfully filing this Ex Parte Application for Temporary Emergency Relief

EX PARTE APPLICATION FOR TEMPORARY EMERGENCY RELIEF AND REQUEST FOR ORDER
-1-

and Request for Order, due to ongoing retaliation, intimidation, and harassment, stemming from the filing of his complaint within this Honorable Court.

This application is based on the accompanying Declaration of Crystal Morgan, counsel for Plaintiff Peterson, which contains a declaration regarding notice, the pleadings and papers on file in this action, and any oral argument the honorable Court may permit. (Declaration attached hereto as Exhibit A and incorporated as if set forth fully herein verbatim.)

Plaintiff Peterson further humbly requests this Honorable Court allow this application and supporting exhibits to be filed under seal, as averred in his separation application, or in the alternative, to redact as necessary to protect sensitive custodial and safety information. Plaintiff seeks only the narrowest relief necessary to prevent unnecessary disclosure and retaliation.

## BACKGROUND

Plaintiff Peterson is housed at the California Men's Colony (CMC) in San Luis Obispo, located at Highway 1, San Luis Obispo, CA 93409. He is in a tier where all of the men being housed attend a "DPR" (Division of Rehabilitative Programs) self-help mandatory class.

The DPR class is supervised by a female correction officer, and a correction officer, who are also the guards on this unit. It is over sought by a supervising officer. Due to ongoing threats, intimidation, and harassment, reported to Plaintiff Peterson's counsels-of-record, they bring forth this motion humbly to request intervention as they fear for Plaintiff's life.

It has been stated by a correction officer that the purpose of the retaliatory conduct is to move Plaintiff Peterson into a more dangerous housing yard, as fully described in the attached declaration. A correction officer has also referenced Plaintiff's near-fatal attack last year in a

threatening manner. Therefore, there is an immediate and irreparable harm to the Plaintiff, rising to this emergent application, with a reasonable fear for Plaintiff's safety.

### **LEGAL STANDARD**

A temporary restraining order is appropriate where the moving party shows immediate and irreparable injury, loss, or damage will result before the parties can be heard. The request must be supported by specific facts in an affidavit or verified complaint. (*See* Fed. R. Civ. P. 65(b); C.D. Cal. L.R. 65-1.) The Supreme Court's framework from *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008) requires you to show: (1) likelihood of success on the merits, (2) likelihood of irreparable harm in the absence of relief, (3) that the balance of equities tips in your favor, and (4) that an injunction is in the public interest.

As applied in California, the Ninth Circuit, in *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011), held that its "serious questions" approach remains viable after *Winter*, but only when it is applied as part of the full four-element test. The serious questions must regard the merits, while using a hardship balance that tips in the movant's favor to support the issuance of an injunction. Again, this is provided if the movant also demonstrates a likelihood of irreparable harm and that the injunction serves the public interest.

Plaintiff Peterson is asking for relief due to an issue that does meet the "serious question" approach taken in California, as this issue stems from his current litigation.  The hardship balance is in Plaintiff Peterson's favor as we are discussing his safety, versus a correction officer who can follow policies and regulations in the normal course of business. It is in the public's interest to provide relief in such a situation, as there is a great interest regarding any inmate's safety, and here we are discussing a celebrity musician who has millions of supporters.

The likelihood of success on the merits of the underlying action also supports Plaintiff. In alliance with the five elements of retaliation found in *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005), the Plaintiff was: 1) engaging in protected conduct (i.e. redress of the government for grievances), 2) subjected to adverse action (retaliated and threatened), and 3) there is a causal connection from the protected conduct and adverse action, which 4) caused a chilling effect, and 5) there was a true lack of a legitimate correctional goal.

As averred in his complaint, Plaintiff was attacked while under the custody and care of the California Department of Corrections and Rehabilitation. Said incident nearly caused Plaintiff to lose his life, and has left him with physical and emotional scars. As this incident was captured on surveillance video, the likelihood of success under the *Winter* test has been met.

Plaintiff is receiving capricious violation write-ups for non-infraction activities which do not have a legitimate reason for correction, as these alleged violations only began after the filing of the underlying complaint. Such actions have a chilling effect on all people who are incarcerated as it demonstrates to Plaintiff and other individuals what will occur if they exercise their First Amendment right to redress the government for grievances.

## ARGUMENT

Plaintiff Peterson seeks precisely the type of emergency relief that Rule 65 was designed to provide. This is not a case involving speculative or hypothetical future harm. The retaliation, threats, and interference with Plaintiff's access to the courts are ongoing, immediate, and escalating, and they place Plaintiff at risk of further injury before the Court can hear the matter on full notice. The conduct at issue is an ongoing threat to Plaintiff's safety. Such a harm cannot be undone by a later judgment or through money damages.

EX PARTE APPLICATION FOR TEMPORARY EMERGENCY RELIEF AND REQUEST FOR ORDER
-4-

Once retaliation occurs, the harm would further be irreparable as Plaintiff Peterson is now forced to expose sensitive records which is likely to create further harms by said correction officer. Importantly, Plaintiff has shown that the requested relief is narrowly tailored. He is not requesting any orders upon the underlying complaint, as he is merely attempting to protect himself from retaliation that stemmed from the filing of said action. This is the proper use of injunctive relief.

The balance of equities is also tipped for Plaintiff Peterson, as the correction officer will suffer no legitimate prejudice from an order requiring them to avoid retaliation, preserve records, and refrain from contact beyond normal security functions. Plaintiff, on the other hand, is facing immediate danger if the conduct continues. Public policy favors safety for all persons, whether incarcerated or otherwise. It also supports access to the courts, which retaliation chills.

It has been determined in California courts that filing grievances, complaints, or reports of staff misconduct constitutes protected First Amendment activity. (*See Shepard v. Quillen*, 840 F.3d 686, 688 (9th Cir. 2016).) Prison officials may not retaliate against an incarcerated person for invoking these rights. (*See Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001).) The Ninth Circuit has held that threats, intimidation, warnings, or punitive actions constitute adverse action. (*See Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009); *See also Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012), holding that, "The mere threat of harm can be an adverse action, even if the threat is not carried out.")

Moreover, it has been established that causation may be shown through direct evidence, circumstantial evidence, or temporal proximity. (*See Rhodes*, 408 F.3d at 567.) When retaliatory conduct follows closely after protected activity, courts infer retaliatory motive. *Bruce v. Ylst*, 351 F.3d 1283, 1288–89 (9th Cir. 2003). Plaintiff Peterson's declaration establishes that the actions

in question occurred immediately after Plaintiff engaged in protected conduct, strongly suggesting a retaliatory motive.

Importantly, the Ninth Circuit does not require a plaintiff to show they were actually chilled from pursuing action within a court, as the question is whether the action "would chill or silence a person of ordinary firmness." (*See Rhodes*, 408 F.3d at 568.) Threats, and retaliatory punishment are more than sufficient. (*See Brodheim*, 584 F.3d at 1271.) Finally, even if a penological justification is asserted, it would still be unlawful if the evidence shows that such actions were motivated by a retaliatory intent. (*See Bruce,* 351 F.3d at 1289.)

A temporary restraining order is therefore necessary to prevent irreparable injury and preserve the status quo until the Court can conduct a preliminary injunction hearing.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Peterson respectfully requests the court enter a temporary restraining order directing that:

A. The identified correctional officer has no direct contact with Peterson except as strictly necessary for ordinary functions, but at no time are the correctional officer and Peterson be alone.

B. The correctional officer and institution personnel be ordered not to retaliate against Plaintiff for exercising his legal rights as permissible under the laws, local rules, and the First Amendment's guarantee to redress our government for grievances.

C. The institution preserves all related video, incident reports, logs, electronic mail, memoranda, grievances, and other records.

EX PARTE APPLICATION FOR TEMPORARY EMERGENCY RELIEF AND REQUEST FOR ORDER
-6-

D.  The Court grant any and all additional relief that is just and proper to protect Plaintiff Peterson and preserve his rights.

Submitted this 26th day of May, 2026,

By: _____
Crystal Morgan (SBN: 335712)

Ronda Dixon (SBN: 136858)
*Attorneys for Daystar Peterson*

EX PARTE APPLICATION FOR TEMPORARY EMERGENCY RELIEF AND REQUEST FOR ORDER
-7-